UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEBRA A. TORRES,

    Plaintiffs,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No.: 13-cv-2000 (PGS)

MEMORANDUM AND ORDER

SHERIDAN, U.S.D.J.

    This matter is before the Court on the appeal of Plaintiff, Debra Torres from the decision of the Commissioner of Social Security denying her a period of disability insurance benefits. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has listed or can be expected to last for a continuous period of not less than 12 months. The issue is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled from her alleged onset date of disability (May 29, 1999) through the date last insured (March 31, 2000) (Time Period).

    One aspect of the substantial evidence standard that arises here is whether Plaintiff has met her burden of proof since the administrative record contains very little medical evidence of Plaintiff's alleged disabling impairments during the Time Period. There are x-rays and MRI reports from 1994, and another set from 2009, neither of which are within the Time Period. During oral argument, Plaintiff's counsel conceded that the evidence was "thin".

1

I.

During the Time Period, Plaintiff was a 40 year old female (d/o/b 12/6/58), with a ninth grade education. During the Time Period she worked as a delicatessen counter clerk at a Shop Rite Supermarket, and prior to that, she worked as a home health aide, and as a lunch packer at a grammar school. While working at Shop Rite, Plaintiff had back pain due to scoliosis. As a result, her hours were cut from full time (38 hours), to 16 hours, then to 8 hours per week. Finally her employment was terminated.

At the administrative hearing, Plaintiff testified about her health issues during the late 1990s. She testified that while at Shop Rite she "couldn't stand on [her] feet for eight hours," and her lower back, arm and neck were "bothering" her when she was slicing lunch meat. Plaintiff emphasized that her pain occurred "in the lower part of [her] back, middle and then the top of [her] neck down;" and the pain was so intense she could not concentrate on what she was doing. Plaintiff could lift about a half-gallon of milk; but had issues lifting loaves of lunch meat which weighed approximately 17 pounds. She testified that she could only sit for about twenty minutes before experiencing pain. Moreover, "using [her] arms and holding [her] arms up causes pain into [her] neck." Plaintiff testified that her back pain also affected her at home and that she "could not stand . . . to do dishes . . . fold clothes . . . vacuum, [or] take the garbage downstairs.

Dr. German E. Malaret, a medical expert, testified at the administrative hearing. His review of the medical records of Englewood Hospital from 1994 confirmed that Plaintiff suffered from "thoracic vector scoliosis with a lumbar . . . scoliosis, in other words she has scoliosis in her back. It has been there for many, many, many years . . ." Dr. Malaret described scoliosis as "curvature of the back." It "bends to the right in the thoracic area and then the lumbar area is going to be bent

to the left, that's – you've got an S shaped curve." Dr. Malaret opined that based on the severity of the scoliosis, Plaintiff could have performed light work during the Time Period. That is, Plaintiff could have lifted 20 pounds for 2.5 hours per day and 10 pounds for about 5.0 hours per day. In concluding same, his testimony was not crystal clear. For example, he testified as follows:

> Q       So you're saying that . . . the marked scoliosis this patient has and the problems she's complained of and apparently that doctors were treating her for, that she could have lifted 20 pounds throughout a -- basically three, two and a half to three hours a day, and ten pounds the other six or five and a half to six?
>
> A       Well, you know, it's -- 20 pounds occasionally, I don't know how [INAUDIBLE) that would be.
>
> Q       That's about two and a half hours a day, I believe.
>
> A       And ten pounds, frequently carry ten pounds .
>
> Q       For five hours a day?
>
> A       Well, she's not going to be carrying five hours repeatedly, that doesn't occur.
>
> Q       Well, I didn't ask you if it occurred, sir, I asked you could she do it, in your opinion.
>
> A       Not persistently, not five hours consistently, no.
>
> Q       Could she carry up to ten pounds up to three hours a day?
>
> A       I have no idea, it all depends on her pain. I can't tell you. I don't have any evidence to say yes or no. [INAUDIBLE] I can't tell you. (T. 54-55).
>
> Q.      Well, not to be argumentative, but you just told me she could do light work or she could lift 20 pounds two and a half hours a day and she could lift ten pounds the other five hours in an eight hour day. That was your testimony, was it not?
>
> A.      Yes it was.

3

As Dr. Malaret notes, there is a lack of evidence about the extent of Plaintiff's impairment upon which to make a substantive determination of Ms. Torres' alleged disability and her ability to work.

Dr. Hector Puig, a vocational expert (VE), testified at the administrative hearing. Although the VE asserts that Plaintiff could perform her past relevant work, he appears to have considered other types of jobs as comparable light work. For example, Plaintiff was a deli counter clerk, a home health aide and a lunch packer; but the VE compared Plaintiff's prior work to short order cook, a cashier, and a catering line assembly worker. The VE further opined that Plaintiff had "no transferrable skills, and her work history moved from light to heavy." The VE concluded that Plaintiff could have performed light work such as a short order cook, a cashier, or an assembly line catering worker, but that Plaintiff could not perform the duties of a housekeeper or home health aide. In addition, Dr. Puig found Plaintiff could perform those jobs requiring repetitive arm movement (such as a meat slicer in a deli), but Plaintiff could only climb, stoop, crouch and kneel occasionally.

## II.

On July 8, 2011 the ALJ issued his decision finding that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2000, and that she had not engaged in substantial gainful activity during the period from her alleged onset date of May 29, 1999 through her date last insured of March 31, 2000. (20 CFR 404.1571 et seq.). He further found that through the date last insured, Plaintiff had severe scoliosis, but the x-ray results only found mild disco genic disease at L1-L2, and mild disc bulging at C5-C6 (20 CFR 404.1520(c)). The

ALJ found that those impairments impose no more than a minimal limitation on the claimant's abilities to perform any work related activity. (20 CFR 404.1521). As such, Plaintiff's impairment or combination of impairments did not meet or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

More specifically, Listing 1.04 (musculoskeletal impairments) refers to disorders of the spine resulting in compromise of a nerve root or the spinal cord. The listing requires that the disorder be accompanied by one of three listed complications: evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudo claudication. In this case, Dr. Malaret did not find such evidence in the 1994 x-ray and MRI.

The ALJ analyzed the case through the five-step sequential process for evaluating the legitimacy of Plaintiff's alleged disability. 20 C.F.R. § 404.1520. Most notably, relying on the testimony of Dr. Malaret's testimony, the ALJ found at step two, that Plaintiff had severe impairments including scoliosis of the back. 20 C.F.R. § 404.1520(c). However, as noted above, the ALJ determined that Plaintiff's severe impairments did not match or equal a listed impairment found in the listing of impairments. *Burnett*, 220 F.3d at 118-20. At step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform a "full range of light work"." As such, Plaintiff could carry 20 pounds occasionally, and 10 pounds frequently; sit for 6 hours in an 8 hour day, and stand and walk for 6 hours in an 8 hour day. In making this determination, the ALJ determined that a medically determinable physical impairment existed (scoliosis) during the Time Period. He then considered Plaintiff's allegations regarding the intensity and persistence of

her symptoms (i.e. there was no other medical treatment from 1994 through 1999). This evidence led the ALJ to conclude Plaintiff could perform light work during the time period.

Finally, the ALJ found through the date last insured, Plaintiff was capable of performing past relevant work as cashier, short order cook, and assembly line (catering service worker); but not as a home health aide. These jobs required the performance of light work as Dr. Malaret opined were within claimant's residual functional capacity (20 CFR 404.1565).

The ALJ stated several reasons for making his determination. First, the ALJ found that there was a lack of objective medical evidence to support Plaintiff's claims of total disability during the Time Period[1]. That is, the ALJ noted that Plaintiff was treated at Englewood Hospital in 1994, but Plaintiff returned to work thereafter, and there is no other evidence of ongoing treatment before or during the Time Period. In fact, the record was limited to diagnostic tests in 1994 and 2009. One test was five years before the end of the Time Period, and the other was about a decade after the Time Period. The first record (November 9, 1994 x-ray) found vertebral bodies in good alignment, no narrowing of the intervertebral disc spaces, and a mild straightening of the lateral view probably due to muscle spasm. An MRI of the cervical spine also performed on November 22, 1994, revealed a mild scoliosis with segmental visualization of the cervical spinal canal and spinal cord, mild bulging disc at C5-6, C6-7, with no focal herniation and no cord compression.

The second record (2009) was discounted by the ALJ due to its remoteness from the Time Period. Furthermore, the ALJ discredited Plaintiff's allegations about her symptoms because there were no medical records of treatment during the Time Period, nor any statements from any

---

[1] As noted above, during oral argument before this Court, Plaintiff's attorney called the evidence "thin".

physicians that Plaintiff had any limitations due to her scoliosis. In short, the ALJ gave greater weight to the testimony of Dr. Malaret over the testimony of Plaintiff. Therefore, the ALJ found Plaintiff could have performed light work, and she could have physically and mentally performed the jobs of cashier, short order cook and assembly line catering service worker.

III.

A claimant is considered disabled under the Social Security Act if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262. Such regulations include the five-step sequential process for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520 (this will be referred to later).

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. 42 U.S.C. § 405(g). *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

7

Doak, 790 F.2d 26 at 28.  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422.  Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not explicitly explain all the evidence or adequately explain his reasons for rejecting or discrediting competent evidence. *Sykes*, 228 F.3d at 266 n.9.  The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion. *Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *see also Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder").  A reviewing court will not set a Commissioner's decision aside even if it would have decided the factual inquiry differently.  *Hartranft*, 181 F.3d at 360.  But despite the deference due the Commissioner, appellate courts retain a responsibility to scrutinize the entire record and to reverse

or remand if the [Commissioner]'s decision is not supported by substantial evidence. *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. *See* 20 CFR § 404.1529. Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. A claimant's symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . .[one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. 20 C.F.R. §404.1529(b); *Hartranft*, 181 F.3d at 362. In *Hartranft*, claimant's argument that the ALJ failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

Generally, Plaintiff has the burden to demonstrate that she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. *Bagnato v. Commissioner of Social Security*, 240 Fed. Appx 978, 979 (3d Cir. 2007). Within the five step sequential process to determine whether a claimant is disabled, the claimant bears the burden of proof in the first four steps, and the burden shifts to the Commissioner at step five. *Id.* As the ALJ found, there was a lack of objective medical evidence to support Plaintiff's claims of total disability during the Time Period, especially since Plaintiff worked for several years after the 1994 diagnosis of scoliosis. As such, Plaintiff failed to meet her burden of proof on steps 1 through 4 of the sequential process.

9

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section. There must be medical signs and findings, established by medically acceptable clinical and laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities, which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be finished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as whether the individual is under a disability. 20 C.F.R. §§ 404.1529(a), SSR 96-7p.

The diagnostic tests put for as evidence in the case were as follows: A November 9, 1994 x-ray found vertebral bodies in good alignment, no narrowing of the intervertebral disc spaces, and a mild straightening of the lateral view probably due to muscle spasm. It also revealed scoliosis of the thoracolumbar spine with a maximum convexity on the right around T9, TlO level, and mild degenerative changes at Ll-2. An MRI of the cervical spine performed on November 22, 1994, revealed a mild scoliosis with segmental visualization of the cervical spinal canal and spinal cord, mild bulging disc at C5-6, C6-7, with no focal herniation and no cord compression. Based upon that evidence, Dr. Malaret found Plaintiff could perform light work.

Here, Plaintiff is attempting circumvent Plaintiff's burden of proof problems by raising the four relatively minor issues. Each issue is addressed below.

1)      Plaintiff argues that the ALJ's finding that she can perform light work is contrary to the opinion of Dr. Malaret. The Court disagrees. Dr. Malaret's testimony is clear (R. 55):

> Q.      Well, not to be argumentative, but you just told me she could do light work or she could lift 20 pounds two and a half hours a day and she could lift ten pounds the other five hours in an eight hour day. That was your testimony, was it not?
>
> A.      Yes it was.

Dr. Malaret may have waffled a bit on this response; but that was due to a lack of evidence presented by Plaintiff. As Dr. Malaret, frustratingly concluded "I have no idea . . . I don't have any evidence . . . . " (see page 3) . There is clearly a lack of medical evidence corroborating the extent of the scoliosis and resulting pain.

2)      Plaintiff argues that the ALJ found that the VE determined Plaintiff could perform five jobs when the record indicates that the VE found she could only perform three.

Plaintiff's second argument is correct, but it is of unsubstantial consequence. That is, the ALJ incorrectly found that Plaintiff could perform five jobs when the VE only discussed three (short order cook, cashier and assembly line catering worker); but in his opinion, the ALJ only found that Plaintiff could only perform the same three jobs as the VE determined, all of which are categorized as light work. The mentioning of five rather than three jobs is a minor detail and as such, there is no plain error.

3)      Plaintiff argues that the three jobs Plaintiff could perform were not past relevant work, and therefore the ALJ should have undertaken step five of the sequential process.

The Court disagrees. The ALJ considered her past relevant work as light work based on Dr. Malaret's testimony and compared it to cashier (semi-skilled light), short order cook (semi-skilled, light) and an assembly line catering service worker (unskilled, light). The ALJ found Plaintiff could have performed all three during the Time Period. Each of these jobs are listed within the Dictionary of Occupational Titles.

4) Plaintiff's final argument is that the ALJ failed to consider that Plaintiff was awarded Social Security Disability Insurance benefits in 2009, and that should be evaluated within the proof.

During oral argument, Plaintiff's attorney conceded that such an award has no evidential impact on Plaintiff's claim herein. Moreover, the ALJ did not consider the medical evidence from 2009 because it was remote – ten years after the Time Period. There is no reasonable argument overcoming the ALJ's ruling.

Conclusion

The Court's sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable person to accept the conclusions reached by the Commissioner. Even where evidence is susceptible of more than one rational interpretation, it is the Commissioner's conclusions which must be upheld. *Sample v. Schweiker*, 694 F. 2d 639, 642. The Court also reviews the record and the ALJ's decision to make certain that the ALJ did not ignore or fail to resolve a conflict created by countervailing evidence. *Daring v. Heckler*, 727 F. 2d 64, 70 (3d Cir. 1984).

As noted above, the case record only contains evidence dated prior to May 29, 1999, as well as some evidence dated in 2009, long after Plaintiff's last day of insured. The record reflects no actual treatment for the alleged impairments during the Time Period.

The claimant's work history is also incompatible with the claimant's allegations of disabling symptoms and limitations. There is evidence of scoliosis from 1994-1995, however, Plaintiff continued working until l999, which indicates her condition did not prevent her from working, nor does it appear that she sought any treatment or took any medications for her pain. Despite her testimony that the cause for lack of treatment was due to economic hardship, the ALJ found the facts make her testimony less than credible. The ALJ has discretion to evaluate the credibility of Plaintiff's complaints and draw a conclusion based upon medical findings and other available information. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006). And, inasmuch as the ALJ had the opportunity to observe the demeanor and determine the credibility of Plaintiff, the ALJ's observations on these matters must be given great weight. *See Wier v. Heckler*, 734 F. 2d 955, 962 (3d Cir. 1984).

The ALJ's decision is based on substantial evidence. 42 U.S.C. *§* 405(g). *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Sykes v. Apfel*, 228 F. 3d 259. 266 n. 9 (3d Cir. 2000). The decision of the Commissioner is affirmed, and the complaint is dismissed.

## ORDER

This matter having come before the Court on Plaintiff's appeal of the Commissioner of the Social Security Administration's final decision denying an application for Disability Insurance Benefits; and the Court having considered all submissions of the parties, and for the reasons stated above;

IT IS on this 21st day of July, 2014

ORDERED that the final decision of the Commissioner of Social Security is affirmed, and the complaint is dismissed.

<i>s/Peter G. Sheridan</i><br>
PETER G. SHERIDAN, U.S.D.J.